# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

MICHAEL MYERS,

                                                          Plaintiff,

                                                                            9:20-CV-961
                              v.                                            (TJM/ATB)

ERICA SAXTON, et al.,

                                                          Defendants.

---

MICHAEL MYERS, Plaintiff, pro se
DAVID C. WHITE, Asst. Attorney General for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the

Honorable Thomas J. McAvoy, United States Senior District Judge.  On August 20,

2020, plaintiff commenced this civil rights action pursuant to 42 U.S.C. § 1983, alleging

that various employees of the Central New York Psychiatric Center ("CNYPC")

violated plaintiff's constitutional rights during his confinement therein.  (Complaint

("Compl."), Dkt. No. 1).

By Decision and Order dated October 9, 2020, Judge McAvoy dismissed several

defendants and causes of action pursuant to 28 U.S.C. §§ 1915, 1915A.  (Dkt. No. 3).

Summonses were subsequently issued to the seven defendants against whom plaintiff's

complaint survived initial review.  (Dkt. No. 4).  In lieu of an answer, defendants

Saxton, Kehoe, Benedict, Dawes, and Lopata[1] filed the motion to dismiss presently

before this court. (Dkt. No. 13). Plaintiff filed a response to the motion to dismiss (Dkt.

No. 15), defendants replied (Dkt. No. 18), and plaintiff recently submitted a sur-reply.

(Dkt. No. 20). For the reasons set forth below, I recommend that the moving

defendants' motion be granted in part and denied in part.

## I.    Facts and Contentions

In his prior order, Judge McAvoy summarized the facts as stated in plaintiff's

complaint. (Dkt. No. 3 at 3-5). Defense counsel has also provided a factual summary in

his motion papers. (Dkt. No. 31-1 at 2-5). Thus, the court will only review the facts as

necessary to discuss the claims presently at issue.

At all relevant times, plaintiff was and remains civilly confined at CNYPC

pursuant to Article 10 of the New York State Mental Hygiene Law ("MHL"). (Compl.

at 2). On July 30, 2020, CNYPC treatment assistant Jane Doe[2] called plaintiff to the

unit staff desk. (*Id.* at 4). Doe proceeded to "yell at plaintiff to clear the hallway."

(*Id.*). Plaintiff asked Doe not to yell at him, however she "kept yelling." (*Id.*). Plaintiff

informed Doe that he would be "writing her up" to defendant Paparella[3] and to risk

management. (*Id.*). Plaintiff also requested to speak to Doe's supervisor, which Doe

---

[1]Defendants Saxton, Dawes and Lopata are described by plaintiff as "treatment team leaders" at CNYPC, and defendants Kehoe and Benedict as "secure care treatment assistants." (Compl. at 1).

[2]Plaintiff initially sued Jane Doe as a defendant in this matter, however the claims against her have since been dismissed by Judge McAvoy upon initial review. (*See* Dkt. No. 3).

[3]It is unclear from the complaint what position non-moving defendant Paparella assumed at CNYPC. Plaintiff merely describes him as "executive consultation." (Compl. at 1).

denied.  (*Id.*).

On August 5, 2020, defendants Paparella and Lopata met with plaintiff on the unit.  (*Id.* at 5).  Plaintiff spoke to Paparella about Doe, and Paparella stated that he would "look into it."  (*Id.*).  After the meeting, plaintiff was approached by another resident to discuss what happened at "the R.L.C. meeting."[4]  (*Id.*).  Doe was working on the unit at that time, and once again "yelled" at plaintiff to clear the hallway.  (*Id.*).  Plaintiff informed Doe that he was "conducting [his] R.L.C. job," to which Doe responded she did not care.  (*Id.*).  Plaintiff then requested to speak to Doe's supervisor.  (*Id.*).  Doe called her supervisor, defendant Kehoe, who directed Doe to write plaintiff up "again."[5]  (*Id.*).

On the morning of August 6, 2020, plaintiff was instructed to go to the mess hall to meet with Kehoe.  (*Id.* at 6).  Upon arrival to the mess hall, plaintiff observed the "property guy" was there, ready to "put a person on MOD status."[6]  (*Id.*). Plaintiff entered the mess hall, where defendants Kehoe and Saxton were waiting.  (*Id.*).  Saxton stated that plaintiff was being placed on MOD status for 14 days "for the two write ups" by Doe.  (*Id.*).  Saxton denied plaintiff's request to bring in Paparella and risk management as witnesses on his behalf. (*Id.*).

---

[4]The complaint does not clarify what an "R.L.C." meeting is, however plaintiff states that he was the "R.L.C. rep" for his unit.  (Compl. at 5).

[5]It appears that plaintiff was also written up during his previous encounter with Doe on July 30th.

[6]"MOD" or "Motivation on Deck" status is described further below in note 12.

At approximately 12:30 p.m.,[7] plaintiff went out to the CNYPC recreation yard. (*Id.*).  After entering the yard, plaintiff approached defendant Martin[8] and asked to speak to Paparella to discuss "his issues."  (*Id.*).  Martin "went in and called his supervisor[,] then came out and sat down."  (*Id.* at 8).  When the yard closed at 1:30 p.m., plaintiff again demanded that Paparella be called outside.  (*Id.*).  Martin advised that he would not call Paparella, and if plaintiff refused to leave the yard they would "pull the red dot emergency response team."  (*Id.*).  Defendant Benedict then approached plaintiff with "threats," stating that plaintiff had two options - to voluntarily go inside or to be taken in by force.  (*Id.*).  After further discussion with Benedict, plaintiff agreed to return inside without the use of force.  (*Id.* at 8-9).  Plaintiff walked back inside and was taken into a "side room."  (*Id.* at 9).  Kehoe entered the side room, informing plaintiff that he thought plaintiff's issues with Doe had been "taken care of."  (*Id.*).  Then, Benedict ordered the side room door shut "with a towel in the door so the door don't [sic] lock." (*Id.*).  Plaintiff remained in the side room for the next 30 minutes, and claims that the temperature was increased "to close to 200 degrees, with no ventilation."  (*Id.*).

Plaintiff was then sent to the dining room, where Paparella was waiting.  (*Id.* at 10).  Plaintiff complained about his treatment in the yard and side room.  (*Id.*).

---

[7] Plaintiff's handwritten complaint proves difficult to read.  Upon initial review, the district court interpreted plaintiff's complaint to identify the relevant date as "August 5, 2020" (Dkt. No. 3 at 4); however, defense counsel has identified it as "August 6, 2020." (Dkt. No. 13-1 at 3).  For purposes of this motion, the court will assume that plaintiff drafted his statement of facts in chronological order, and adopt defense counsel's interpretation.  In any event, this discrepancy has no bearing on the court's recommendation.

[8] Non-moving defendant Martin was another "secure care treatment assistant" at CNYPC. (Compl. at 1).

Paparella discussed with plaintiff what actions could be taken if a resident became disruptive, and further advised that medical doctors and nurses do not report to the side room. (*Id.*). Paparella ended the meeting, and plaintiff was advised that he was no longer permitted to use the yard. (*Id.* at 11).

Later, plaintiff was called to the mess hall to meet with defendant Lopata, who advised him that his MOD status was being extended for another fourteen days per his treatment team. (*Id.*). Lopata stated that defendant Dawes "was involved" with this decision. (*Id.*). Lopata also explained that plaintiff was not allowed to use the yard, as a safety and security issue. (*Id.*). Plaintiff disputed the legality of such a consequence. (*Id.*).

## II.  <u>Motion to Dismiss</u>

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted);

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995).  The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference.  *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).  Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing *inter alia County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of NLRB decisions)).  *See also Combier-Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Services, LLC*, No. 3:12-CV-1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties).

### III.    Due Process (Fourteenth Amendment)

#### A.    Legal Standards

The Fourteenth Amendment provides that a state may not deprive a person of liberty or property "without due process of law." U.S. Const. amend. XIV. The Due Process Clause contains both a procedural and substantive component.  Procedural due process claims concern the "adequacy of the procedure provided by [a] governmental body for the protection of liberty or property rights of an individual."  *Sanchez v. Univ. of Connecticut Health Care*, 292 F. Supp. 2d 385, 397 (D. Conn. 2003) (citation omitted).  To successfully state a claim under section 1983 for denial of procedural due process, a plaintiff must show that he or she 1) possessed an actual liberty or property interest, and 2) was deprived of that interest without being afforded sufficient process. *See Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004); *see also Tellier v. Fields*, 280 F.3d 69, 79–80 (2d Cir. 2000) (citations omitted).

In addition to its governance over fair process, the Fourteenth Amendment "cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them." *Hurd v. Fredenburgh*, No. 19-3482, ___ F.3d. ___, 2021 WL 96886, at *7 (2d Cir. Jan. 12, 2021) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (internal quotation marks and citations omitted)). "Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Id.* (quoting *Southerland v. City of New York*, 680 F.3d 127,

151 (2d Cir. 2012) (internal quotation marks and citation omitted).[9]

### B.    Application

#### 1.    Procedural Due Process  - Placement on MOD Status

Plaintiff contests the fairness of the procedure by which he was placed on MOD status by his treatment team.[10]  Specifically, he alleges that he was denied the right to "confront [his] accuser," "use witnesses," or "access audio/video as proof that the incident never happen[ed]."  (Compl. at 13, 16).  Defendants argue that plaintiff has failed to plausibly allege a procedural due process claim.  (Defendant's Brief ("Def.'s Br.") at 5-7).

Plaintiff currently has another section 1983 action pending in this district before U.S. District Judge Brenda K. Sannes.  *See Myers v. Saxton*, No. 9:20-CV-465 (BKS/DJS)  The case before Judge Sannes shares some of the same defendants and legal issues involved in this action, including a claim challenging plaintiff's prior

---

[9]Individuals subjected to involuntary confinement, like plaintiff, retain substantive due process rights under the Fourteenth Amendment. *See Youngberg v. Romeo*, 457 U.S. 307, 315-16 (1982).  Involuntarily committed residents specifically retain rights under the Due Process Clause to adequate food, shelter, clothing, and medical care; training and treatment "as an appropriate professional would consider reasonable to ensure his safety and to facilitate his ability to function free from bodily restraints"; safe, decent, and humane conditions of confinement; and freedom from undue bodily restraint "except when and to the extent professional judgment deems this necessary to assure such safety or to provide needed training." *Youngberg*, 457 U.S. at 315-16, 320, 324.

[10]The complaint does not specifically allege a violation of plaintiff's substantive due process rights in this regard, i.e. whether his ultimate placement on MOD status lacked justification. *See Southerland v. City of New York,* 680 F.3d at 142 ("[W]hile a procedural due process claim challenges the procedure by which [deprivation of liberty] is effected, a substantive due process claim challenges the 'fact of the [deprivation'] itself.").

placement on MOD status.[11]  Recently, Judge Sannes considered the defendants' motion

to dismiss plaintiff's Fourteenth Amendment due process claim relative to his March

2020 placement on MOD status at CNYPC.  *Myers v. Saxton,* No. 9:20-CV-465

(BKS/DJS), 2021 WL 149062, at *3–5 (N.D.N.Y. Jan. 15, 2021).  In her Decision and

Order, Judge Sannes rejected the defendants' general argument that a plaintiff has no

"enforceable liberty interest with respect to being placed on MOD status."  *Id.* at 3–4. In

doing so, Judge Sannes acknowledged the numerous Northern District cases cited by

defendants in support of their argument.  However, she distinguished these cases to the

extent they were "issued on summary judgment after examining the full record and

concluding that the professionals in those cases acted in accordance with the

'professional standard' test[.]" *Id.* at 4.  Ultimately, Judge Sannes declined to adopt a

bright line rule that "placement on MOD status at the CNYPC can never implicate an

individual's liberty interests."  *Id.*

    In this action, defendants rely on the same argument rejected by Judge Sannes in

seeking dismissal of plaintiff's claim challenging the procedure by which he was placed

on MOD status in August 2020.  The Sex Offender Treatment Program ("SOTP") at

CNYPC, including the MOD program,[12] has been recognized by the courts in this

---

[11]In the case before Judge Sannes, plaintiff challenges his placement on MOD status in March 2020.  *See Myers v. Saxton,* No. 9:20-CV-465 (BKS/DJS), Dkt. No. 10.  Here, plaintiff challenges his subsequent placement on MOD status in August 2020.  (Dkt. No. 1). It appears that plaintiff attempted to supplement his amended complaint in the case before Judge Sannes to include the August 2020 MOD placement, however Judge Sannes denied plaintiff's request to do so.  *See Myers v. Saxton,* No. 9:20-CV-465 (BKS/DJS), 2021 WL 149062, at *6 (N.D.N.Y. Jan. 15, 2021).

[12] MOD, or "Motivation on Deck," provides residents with a history of violence, threats of violence, or other chronic treatment-interfering behavior a treatment setting which permits

district to be "clinically appropriate and supported by legitimate interests." *Brooks v. Hogan*, No. 9:15-CV-00090 (BKS/TWD), 2020 WL 5034226, at *13 (N.D.N.Y. Apr. 27, 2020), *report and recommendation adopted*, 2020 WL 2832045 (N.D.N.Y. June 1, 2020) (citing inter alia *Yeldon v. Hogan*, 2010 WL 983819, at *5 (finding the MOD program at CNYPC SOTP was implemented for legitimate reasons made by qualified professionals), *aff'd*, 400 F. App'x 582 (2d Cir. 2010) ("for substantially the same reasons stated by the magistrate judge in his thorough and well-reasoned decision")).

It has been the overwhelming majority view in this district that similarly situated plaintiffs lack "either a liberty or property interest in being assigned to any particular status at CNYPC."[13]  However, Judge Sannes properly noted that the majority of these decisions have been rendered at the summary judgment phase. *See Brooks v. Hogan*, 2020 WL 5034226, at *20; *Smith v. Hogan*, No. 9:09-CV-0554 (GTS/GHL), 2011 WL 4343978, at *10 (N.D.N.Y. Aug. 1, 2011); *Aiello v. Lamitie*, No. 9:16-CV-53 (MAD/CFH), 2020 WL 918989, at *5 (N.D.N.Y. Feb. 26, 2020) (plaintiffs failed to establish that they have an enforceable liberty interest in avoiding MOD status).

I agree with Judge Sannes's conclusion that the case law does not preclude a CNYPC resident-plaintiff from successfully asserting that restrictions *actually* imposed

---

more intense containment and observation. *See McChesney v. Hogan*, No. 9:08-CV-563 (NAM/DEP), 2010 WL 3613806, at *1 (N.D.N.Y. Aug. 11, 2010), *report and recommendation adopted*, 2010 WL 3522513 (N.D.N.Y. Sept. 2, 2010) (citing defendants' Local Rule 7.1(a)(3) Statement); *see also Yeldon v. Hogan*, No. 9:08-CV-769 (NAM/RFT), 2010 WL 983819 at *4 (N.D.N.Y. Mar. 15, 2010) (citing CNYPC treatment provider's declaration describing MOD unit and its treatment purpose).

[13]Importantly, "where no liberty interests are at stake, no procedures are required." *Gill v. Riddick*, No. 9:03-CV-1456 (NAM/RFT), 2005 WL 755745, at *15 (N.D.N.Y. Mar. 31, 2005).

on him while involuntarily committed, including the nature of his placement on MOD status, deprived him of one of his enumerated liberty interests.  However, considering the consistent finding in this district that, as a general matter, the CNYPC and MOD programs are "clinically appropriate and supported by legitimate interests," it stands to reason that a plaintiff  must allege something more than mere placement on MOD status in order to invoke the protection of the due process clause.

In *Groves v. New York*, No. 9:09-CV-0412 (GLS/DEP), 2010 WL 1257858, at *9-10 (N.D.N.Y. Mar. 1, 2010), Magistrate Judge David E. Peebles considered defendants' motion to dismiss the plaintiff's Fourteenth Amendment procedural due process claim.  Groves's claim was premised upon the defendants' "allegedly lowering his status . . . to "MOD" without providing him sufficient due process." *Id.* at 8.  Judge Peebles construed the complaint to assert that Groves was deprived of a liberty interest without the opportunity to be heard.  (*Id.*).  Upon analysis, Judge Peebles first addressed whether plaintiff had a protected liberty interest in his status at CNYPC, noting that "plaintiff does not provide any rule or law that might create an entitlement to . . . retention of his . . . status." *Id.* at 9.  Judge Peebles went on to note that the Second Circuit has "rejected the claim that a due process right exists for a specific type of treatment," thus the right to treatment exists "only in order to safeguard the basic liberty interests of reasonable care and safety and freedom from undue bodily restraint." *Id.*

Notably, Judge Peebles pointed out that the "[f]ace of Groves's complaint does not disclose any fact that would show the significance of a change [of] status, how [the] status affected [Groves's] way of living within the CNYPC, or how long this change in

11

status affected him, if at all." (*Id.*).  He further opined that there was "nothing in plaintiff's complaint suggesting that he was denied reasonable care and safety or freedom from undue bodily restraint." (*Id.*).  Thus, he concluded that "plaintiff's complaint . . . [failed] to allege facts rising to a level to support a plausible claim that by their actions defendants deprived him of a protected liberty interest." (*Id.*).  For these reasons, Judge Peebles recommended dismissal of plaintiff's procedural due process claim relative to plaintiff's placement on MOD status, with leave to replead against several individual defendants.[14]

The case law surrounding this issue suggests that the viability of a civilly confined plaintiff's due process claim predicated on his transfer to MOD status turns on whether the complaint sufficiently pleads the deprivation of a recognized liberty interest.  To this end, I do not find the *Groves* decision to dismiss plaintiff's claim to be at odds with Judge Sannes's recent decision in *Myers*.  Moreover, because in this case plaintiff has not alleged the deprivation of any constitutionally protected liberty interest other than his general placement on MOD status, the court recommends granting defendants' motion and dismissing plaintiff's Fourteenth Amendment procedural due process claim as set forth in the Third and Thirteenth Causes of Action, with leave to replead.

### 2.    Substantive Due Process - Conditions of Confinement

Defendants seek to dismiss the complaint in full against defendant Benedict.

_____

[14]District Court Judge Gary L. Sharpe adopted Judge Peebles's report-recommendation, in full, on March 26, 2010.  *Groves v. New York,* No. 9:09-CV-412 (GLS/DEP), 2010 WL 1257942 (N.D.N.Y. Mar. 26, 2010).

(Def.'s Br. at 9-10). Although defendants specifically argue dismissal in the context of plaintiff's excessive force claim (*see* Point III(b)(3), *infra*), plaintiff also alleges that Benedict subjected plaintiff to unconstitutional conditions of confinement when she confined him to a side room at CNYPC. (Compl. at 9).

"Conditions of confinement claims asserted by civilly committed plaintiffs must be asserted and evaluated under the Due Process Clause of the Fourteenth Amendment." *Gallagher v. Sullivan*, No. 9:15-CV-1327 (TJM/TWD), 2016 WL 4146128, at *4 (N.D.N.Y. Aug. 4, 2016) (citing inter alia *Suggs v. Maxymillian*, No. 9:13-CV-359 (NAM/TWD), 2015 WL 5750998, at *12 (N.D.N.Y. Sept. 30, 2015)). "[D]ue process requires that the conditions and duration of confinement [for civilly confined persons] bear some reasonable relation to the purpose for which persons are committed." *Seling v. Young*, 531 U.S. 250, 265 (2001) (citations omitted). Thus, courts are required to balance "the legitimate interests of the State and the rights of the involuntarily committed to reasonable conditions of safety and freedom from unreasonable restraints." *Youngberg v. Romeo*, 457 U.S. 307, 321 (1982). In so doing, courts must "show deference to the judgment exercised by a qualified professional." *Id.* at 322. "[A] decision, if made by a professional, is presumptively valid," and "liability may be imposed only when the decision of the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such judgment." *Id.* at 323.

At the motion to dismiss stage, a plaintiff need not prove his claim for unconstitutional conditions of confinement, just plausibly plead it. Here, plaintiff's

allegation that he was subjected to "torture" when he was effectively closed in a side room for thirty minutes, where temperatures reached "close to 200 degrees," and there was no ventilation, is sufficient to withstand defendants' motion to dismiss. Accordingly, defendant's motion should be denied to the extent they seek dismissal of plaintiff's Seventh, Eighth, and Seventeenth Causes of Action against Benedict for unconstitutional conditions of confinement.

### 3. Substantive Due Process - Excessive Force

Defendants also seek to dismiss plaintiff's excessive force claim against Benedict. (Def.'s Br. at 9-10). Specifically, plaintiff alleges that Benedict "applied threats by using force" to get plaintiff to come in from the yard. (Compl. at 15).

"[T]he substantive due process guarantee of the Fourteenth Amendment[15] protects individuals from 'conscience-shocking' exercises of power by government actors, such as malicious and sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose." *Ocasio v. City of Canandaigua*, No. 18-CV-6712L, 2021 WL 115509, at *4 (W.D.N.Y. Jan. 13, 2021) (internal quotations omitted) (quoting *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 252 (2d Cir. 2001)). In order to state an excessive force claim under the Fourteenth Amendment, a plaintiff "must show . . . that the force purposely or knowingly used against him was objectively unreasonable." *Fletcher v. City of New*

---

[15]Because plaintiff is a civilly confined, the court evaluates his excessive force claim under the Due Process Clause of the Fourteenth Amendment, as opposed to the Eighth Amendment (convicted individuals) or Fourth Amendment (individuals subject to arrest/seizure).

*London*, No. 3:16-CV-241, 2018 WL 4604306, at *10 (D. Conn. Sept. 25, 2018)

(quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015)). "[O]bjective

reasonableness turns on the facts and circumstances of each particular case." *Kingsley*,

576 U.S. at 397 (internal quotations omitted). In *Kingsley*, the United States Supreme

Court identified several relevant factors a court may consider in determining the

reasonableness or unreasonableness of the force used, including the relationship

between the need for the use of force and the amount of force used; the extent of the

plaintiff's injury; any effort made by the officer to temper or to limit the amount of

force; the severity of the security problem at issue; the threat reasonably perceived by

the officer; and whether the plaintiff was actively resisting. *Id.*

 Here, it is uncontested that defendant Benedict did not apply physical force to

plaintiff during their encounter.  After plaintiff refused to follow Benedict's verbal

orders, Benedict told plaintiff that he could either leave the yard voluntarily, or he

would be put in "the bed" and taken inside by force.  (Compl. at 8).  A few minutes

later, Benedict repeated these options to plaintiff, and then plaintiff heard her tell a staff

member to "get a bed outside, so they can put [him] in it."  (*Id.* at 9).  Plaintiff finally

agreed to go back inside voluntarily, and appears to have walked inside, escorted by

CNYPC staff.  (*Id.*).

  It is "well recognized that although indefensible and unprofessional, verbal

threats or abuse are not sufficient to state a constitutional violation cognizable under §

1983." *Tillard v. Pruckno*, No. 10-CV-0344 (NAM/DEP), 2010 WL 5904470, at *7

(N.D.N.Y. Nov. 29, 2010), *report and recommendation adopted*, 2011 WL 807550

(N.D.N.Y. Mar. 2, 2011) (internal quotations and citation omitted).  Thus, this court is not persuaded that Benedict's verbal threat to physically remove plaintiff from the yard constitutes a basis for a Fourteenth Amendment excessive force claim.  *See Lewis v. Huebner,* No. 17-CV-8101, 2020 WL 1244254, at *6 (S.D.N.Y. Mar. 16, 2020) (Involuntary committed plaintiff's allegations that facility staff "cursed at her, threatened to break her wrists, announced she had no credibility, and reprimanded her for writing letters cannot support a claim because "[i]n this Circuit, allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged.") (citations omitted); see also *Williams v. Dubray*, 557 F. App'x 84, 86 (2d Cir. 2014) (expressly applying the same principle in a Fourteenth Amendment context).

In any event, plaintiff's allegations do not meet the threshold of actionable conduct under the Due Process Clause.  The "force" threatened by Benedict – restraint of a civilly confined individual who refused to follow orders, and his involuntary transfer back into the facility – cannot by any reasonable jury be interpreted as  a "conscience-shocking" exercise of power, or amount to a "malicious and sadistic abuse" of power serving "no legitimate government purpose."  *See Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d at 252.  Otherwise put, Benedict's actions, or threatened action, in response to plaintiff's insubordination was not an "objectively unreasonable degree of force."  *See Kingsley,* 576 U.S. at 396-97; *see also Vallen v. Newson,* Nos. 16-CV-2632, 16-CV-2893, 2019 WL 1317569, at *4 (E.D.N.Y. Mar. 22, 2019) ("Courts have held that isolated, de minimus [sic] uses of force against involuntarily committed plaintiffs do not constitute excessive force and are thus not constitutional

deprivations."). For the reasons stated above, this court recommends dismissing plaintiff's Fourteenth Amendment excessive force claim against defendant Benedict as set forth in the Ninth Cause of Action.

## IV.   **Retaliation (First Amendment)**

### A.   **Legal Standards**

In order to state a prima facie claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that "(1) the conduct in which he engaged was protected, (2) the defendants took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action" —in other words, that the protected conduct was a 'substantial or motivating factor' in the defendant's decision to take action against the plaintiff. *Kotler v. Bosco*, No. 9:17-CV-0394 (GTS/DEP), 2018 WL 3748347, at \*3 (N.D.N.Y. May 24, 2018), *report and recommendation adopted*, 2018 WL 3747810 (N.D.N.Y. Aug. 7, 2018) (citing inter alia *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *see also Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007)). Courts must approach claims of retaliation "with skepticism and particular care because virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (internal quotations omitted) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

17

### B.    Application

Defendants move to dismiss plaintiff's First Amendment retaliation claim against defendant Saxton.  (Def.'s Br. at 7-8).  Specifically, plaintiff alleges that Saxton placed him on MOD status in retaliation for plaintiff's request to speak to Doe's supervisor on two prior occasions.  (Compl. at 15).  However, even accepting plaintiff's allegations as true, at least two other courts have suggested that a request to speak to a supervisor does not qualify as a protected activity for purposes of a First Amendment claim.  *See Dowling v. Barkman*, No. 9:17-CV-647 (MAD/DJS), 2019 WL 7971868, at *3 n. 1 (N.D.N.Y. Dec. 20, 2019), *report and recommendation adopted*, 2020 WL 103480 (N.D.N.Y. Jan. 8, 2020) (citing *Jones v. McElroy*, No. 2:13-CV-1375, 2015 WL 410928, at *6 (E.D. Cal. Jan. 30, 2015), *report and recommendation adopted*, 2015 WL 1014653 (E.D. Cal. Mar. 5, 2015) ("the court has found no authority holding that a prisoner's request to speak to a correctional supervisor is constitutionally protected speech.").  Likewise, this court has not found any compelling authority that plaintiff's request to speak to a supervisor at CNYPC constituted protected speech.  Thus, plaintiff has failed to meet the pleading requirements of his retaliation claim against defendant Saxton, and defendants' motion to dismiss should be granted as to plaintiff's Tenth Cause of Action.

### V.    <u>Personal Involvement - Defendant Dawes</u>

### A.    **Legal Standard**

It has long been established that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983[,]" and supervisory officials may not be held liable merely because they held a position of authority. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). In *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), the Second Circuit articulated standards for courts to use when determining personal involvement or supervisory liability.[16]

However after the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the factors articulated in *Colon* were called into question. District courts, including the Northern District of New York[17] noted the possibility that the *Colon* factors were no longer viable, but that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *See Conklin v. County of Suffolk*, 859 F. Supp.

---

[16] These factors were:

> (1) the defendant participated directly in the alleged constitutional violation;
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.

[17] *See e.g. Vance v. State of New York*, No. 9:19-CV-748 (BKS/ATB), 2020 WL 7481585, at *3 & n.3 (N.D.N.Y. Nov. 30, 2020) (discussing cases), *report-recommendation adopted*, 2020 WL 7480955 (N.D.N.Y. Dec. 18, 2020).

2d 415, 439 (E.D.N.Y. 2012) (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y.2011)); *Young v. Choinski*, 15 F. Supp. 3d 172, No. 3:10-CV-606, 2014 WL 962237, at *10–12 (D. Conn. Mar. 13, 2014) ("Although *Iqbal* does arguably cast doubt on the viability of certain categories of supervisory liability, where the Second Circuit has not revisited the criteria for supervisory liability, this Court will continue to recognize and apply the *Colon* factors.").

Recently, pursuant to *Iqbal*, and in the context of the appeal of a qualified immunity issue, the Second Circuit has specifically revised its standard for determining personal involvement or supervisory liability, finding that the *Colon* factors are no longer all viable and articulating the proper standard for the courts in this circuit to utilize. *Tangreti v. Bachmann*, No. 19-3712, __ F.3d __, 2020 WL 7687688, at *4-6 (2d Cir. Dec. 28, 2020).

Joining other circuits, the Second Circuit held that, after *Iqbal*, there is no "special" rule for supervisory liability. *Id.* at *6.

> Instead, a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 . . . . "The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue" because the elements of different constitutional violations vary. *Id.* The violation must be established against the supervisory official directly.

*Id.* (quoting *Iqbal*, 556 U.S. at 676). Quoting a 10th Circuit case, the *Tangreti* court stated that "'after *Iqbal*, [a p]laintiff can no longer succeed on a § 1983 claim against [a

d]efendant by showing that as a supervisor he behaved knowingly or with deliberate indifference that a constitutional violation would occur at the hands of his subordinates, *unless that is the same state of mind required for the constitutional deprivation he alleges*.'" *Id.* (alterations in original) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1204 (10th Cir. 2010) (internal quotation marks omitted) (emphasis added, other citations omitted).  The supervisor must have committed the violation him or herself, not by the supervision of others who committed the violation. *Id.*  Likewise, the supervisor must personally display the requisite state of mind, depending on the violation at issue. *Id.*

### B.    Application

Defendants move to dismiss plaintiff's complaint in full as against defendant Dawes, for lack of her personal involvement in any of the alleged constitutional violations. (Def.'s Br. at 8-9).  Plaintiff alleges that Dawes "was involved" with the decision to extend plaintiff's MOD status.  (Compl. at 11).  Plaintiff's motion papers refer to Dawes as a "supervisor" (Dkt. No. 20 at 2), stating that she "knew [plaintiff] was having issues and failed to remedy these harsh conditions that was coming from [staff]."  (Dkt. No. 15).

As previously discussed, plaintiff's placement on MOD status does not implicate the Due Process Clause, thus Dawes's involvement in plaintiff's treatment, as alleged, does not support a claim of constitutional proportion.  To the extent that plaintiff claims Dawes is otherwise liable, he has failed to plausibly allege her personal involvement in any other violations set forth in the complaint.  Indeed, plaintiff's reference to Dawes is

brief and fleeting, and fails to even imply that Dawes, "through [her] own individual actions, has violated the Constitution." *See Tangreti v. Bachmann*, 2020 WL 7687688, at *6.

Accordingly, defendants' motion to dismiss the complaint in full as against Dawes should be granted.

**WHEREFORE**, based on the above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 13) based upon Fed. R. Civ. P. 12(b)(6) be **GRANTED IN PART AND DENIED IN PART**, and it is further

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 13) be **GRANTED**, and the plaintiff's complaint **DISMISSED WITHOUT PREJUDICE**, as to defendant **Dawes,** and it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 13) be **GRANTED**, and plaintiff's Fourteenth Amendment Procedural Due Process Claim against defendants **Saxton, Kehoe**, **and Lopata** be **DISMISSED WITHOUT PREJUDICE,** and it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 13) be **GRANTED**, and plaintiff's First Amendment Retaliation Claim against defendant **Saxton** be **DISMISSED WITHOUT PREJUDICE,** and it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 13) be **GRANTED**, and plaintiff's Fourteenth Amendment Excessive Force Claim against defendant **Benedict** be **DISMISSED WITHOUT PREJUDICE,** and it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 13) be

**DENIED** in all other respects.[18]

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen (14) days within which to file written objections to the foregoing report.  Such

objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary*

*of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

FED. R. CIV. P. 6(a), 6(e), 72.


Dated: January 28, 2021

_____

Andrew T. Baxter

U.S. Magistrate Judge

---

[18] As discussed above, the court does not recommend granting defendants' motion to the extent it seeks dismissal of any other causes of action alleged against defendant Benedict relating to the conditions of plaintiff's temporary confinement in the side room.  Moreover, defendants' partial motion to dismiss seeks an order dismissing the complaint in full as against defendants Benedict, Saxton, Kehoe, and Lopata.  However, at this early stage of the litigation, and in the absence of any additional factual support as to the surviving causes of action, the court recommends denying defendants' request and ordering that defendants Saxton, Kehoe, Lopata and Benedict respond to the complaint, namely plaintiff's surviving sixth, seventh, eighth, fifteenth, sixteenth, seventeenth, eighteenth, and twenty-first claims.